UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| EQUIPMENT ACQUISITION RESOURCES, INC. | ) ) | Case No. 09 B 39937 |
| | ) | Hon. John H. Squires |
| Debtor. | ) ) | |
| _____ | ) ) ) | |
| EQUIPMENT ACQUISITION RESOURCES, INC., | ) ) | Adv. No. _____ |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FIRST SECURITY BANK; MINNWEST BANK METRO; EAGLE CREST CAPITAL BANK; STATE BANK & TRUST; HIGHLAND BANK; PROSPERAN BANK; THE NATIONAL BANK; LANDMARK GROUP, INC.; and SIGNATURE BANK | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

William A Brandt, Jr., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc. ("**EAR**"), by his attorneys, Diamond McCarthy LLP, brings this adversary proceeding against First Security Bank ("**FSB**"), Minnwest Bank Metro ("**Minnwest**"), Eagle Crest Capital Bank ("**Eagle**"), State Bank & Trust ("**SBT**"), Highland Bank ("**Highland**"), Prosperan Bank ("**Prosperan**"), The National Bank ("**TNB**"), Landmark Group, Inc. ("**Landmark**"), and Signature Bank ("**Signature**") (collectively, the "**Defendants**").

This suit seeks the avoidance and recovery of $779,168.87 which was transferred from EAR for the benefit of the Defendants within the ninety days preceding the filing of EAR's bankruptcy proceeding.

### PARTIES, JURISDICTION & VENUE

**I.     Nature of the Proceeding**

1. This is an adversary proceeding, pursuant to Fed. R. Bankr. P. 7001, which relates to the Chapter 11 proceeding captioned *In re Equipment Acquisition Resources, Inc.*, Case No. 09-B-39937 (Bankr. N.D. Ill., Eastern Div.).

**II.    Plaintiff**

2. On October 23, 2009, EAR filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in this Court (the "**Petition Date**"). This Court confirmed the Plan on July 15, 2010 [DE #322]. Pursuant to the terms of the Plan, EAR executed the Plan Administrator Agreement, appointing Brandt as Plan Administrator.

3. The Plan expressly retained the EAR's Litigation Claims, as defined in Plan ¶1.43. Under the terms of the Plan and the Plan Administrator Agreement, Brandt has the responsibility and right to pursue the Litigation Claims on behalf of the Estate, including EAR's claims against the Defendants.

**III.   Defendants**

4. On information and belief, Defendant FSB is a corporation formed under the laws of Minnesota. FSB may be cited to appear through service on one of its officers at 102 St. Olaf Street, Canby, Minnesota 56220.

5. On information and belief, Defendant Minnwest is a Corporation formed under the laws of Minnesota. Minnwest may be cited to appear through its chief executive officer, Thomas Longlet at 1150 Yankee Doodle Road, Eagan, Minnesota 55121.

6. On information and belief, Defendant Eagle is a corporation formed under the laws of the state of Minnesota. Eagle may be served through one of its officers at its principal place of business located at 1016 Civic Drive NW, Rochester, Minnesota 55901.

7. On information and belief, Defendant SBT is a corporation formed under the laws of North Dakota. SBT may be cited to appear through its one of its officers at its principal office located at 3100 13th Avenue S, PO Box 10877, Fargo, North Dakota 58106.

8. On information and belief, Defendant Highland is a corporation formed under the laws of the state of Minnesota. Highland may be cited to appear through its chief executive officer, Richard Wall at 2100 Ford Parkway, St. Paul, Minnesota 55116.

9. On information and belief, Defendant Prosperan is a corporation formed under the laws of Minnesota. Prosperan may be cited to appear through its Chief Executive Officer at 620 Norell Avenue North, Stillwater, Minnesota 55082.

10. On information and belief, Defendant TNB is a corporation formed under the laws of Iowa. TNB may be cited to appear through its President and Chief Executive Officer, John DeDoncker at TNB's headquarters located at 852 Middle Road, Bettendorf, Iowa 52722.

11. On information and belief, Defendant Landmark is a corporation formed under the laws of Minnesota. Landmark may be cited to appear through its Chief Executive Officer, Paul Heck, at 8713 Walton Oaks Drive, Bloomington, Minnesota 55438.

12. On information and belief, Defendant Signature is a corporation formed under the laws of Minnesota. Signature may be cited to appear through its chief executive officer Kenneth Brooks at 9800 Bren Road E, #200, Minnetonka, Minnesota 55343.

## IV. Jurisdiction and Venue

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334 in that this action arises in, arises under, and/or relates to EAR's bankruptcy proceeding.

14. This action is, at least in part, a core proceeding under 28 U.S.C. §§ 157. In the alternative, Plaintiff consents to entry of a final order or judgment by this Court.

15. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

### I. EAR's Formation and Operations

16. EAR was incorporated in 1997 under the laws of Illinois. Under its business model, EAR was designed to operate as a refurbisher of special machinery, a manufacturer of high-end technology parts, and a process developer for the manufacturing of high-technology parts. The bulk of EAR's stated revenue was derived from the refurbishing and selling high-tech machinery. EAR was set up to purchase high-tech equipment near the end of its life-cycle at low prices relative to the cost of a new unit, and then refurbish the equipment for sale to end-users at substantial gross margins using a propriety process. Eventually, EAR's apparent success came to an end, and Player's systematic abuse of EAR and his other wrongful conduct was revealed. Investigations by Brandt uncovered that Player used EAR to support a Ponzi-like scheme that Player implemented for his personal enrichment.

### II. Sheldon Player's Wrongful Conduct at EAR

17. Sheldon Player ("**Player**") systematically and repeatedly caused EAR to enter into unnecessary and harmful financing and lease agreements related to over-valued machinery.

As part of this fraudulent scheme, Player caused EAR to enter into financing and financing-type lease agreements with certain entities (the "**Financial Entities**") related to equipment that was allegedly owned by Machine Tools Direct, Inc. ("**MTD**"). However, MTD was a mere straw-man in Player's scheme.

18. Many, if not all, of the sale invoices from MTD sent to the Financial Entities grossly overstated the value of the underlying equipment. Moreover, MTD "purchased" the underlying equipment from EAR mere days before MTD sold the equipment to either EAR or the Financing Entity. In those instances, Player purportedly caused EAR to transfer title to the underlying equipment to MTD. MTD then sold that equipment to EAR (or the Financial Entity in the case of a lease) at an inflated purchase price. As a result of this scheme, Player caused EAR to lease equipment at a cost far in excess of its actual value.

19. At first glance, the transactions might appear beneficial to EAR due to increased sales revenue. However, EAR could not and did not benefit from these circular transfers since EAR paid far more for the equipment under the financing or lease agreements than it ever received via the sale to MTD. Moreover, Player's defalcations further prevented EAR from having the funds necessary to repay the related financing or lease obligations, thus requiring EAR to enter into an increasing number of these transactions in order to have sufficient funds to repay its current obligations. In effect, Player's misconduct amounted to a Ponzi-scheme where funds from later Financing Entities were used to repay EAR's obligations under earlier financing and lease obligations.

20. In 2009, after receiving numerous notices of default from its creditors, EAR sought the assistance of outside counsel and turn-around specialists in order to help in the

company's rehabilitation. After some investigation, EAR's outside counsel and consultants discovered evidence of potential fraud in EAR's leasing activity.

21. Once it became apparent that Player had engaged in potentially fraudulent activity, EAR's officers and directors resigned from their positions at EAR on October 8, 2009. With the resignation of the former officers and directors, Donna Malone and Mark Anstett, Player too lost any power to influence or control EAR's operations. Brandt was elected as sole member of the board of directors and as the Chief Restructuring Officer ("**CRO**") subsequent to the departure of Malone, Anstett, and Player.

22. The CRO was vested with the power to assume full control of all operations of EAR and all the powers and duties of the President, Chief Executive, and Treasurer of EAR. Pursuant to these powers, the CRO filed EAR's voluntary Chapter 11 bankruptcy petition to manage EAR's assets for the benefit of all creditors. Pursuant to the Plan, Brandt was appointed as the Plan Administrator for EAR.

### III. The Lease Agreements with EAR

23. On or about May 16, 2005, EAR entered into a Lease Agreement with First Premier Capital LLC ("**FPC**") related to the lease of certain equipment (the "**Master Lease**"). Subsequent to the execution of the Master Lease, EAR and FPC entered into at least twenty-three lease schedules between May 2006 and August 2009 for the lease of equipment.

24. On information and belief, FPC assigned its interest under numerous lease schedules to the Defendants. The lease schedules provided that EAR was required to make monthly payments to FPC with respect to the equipment identified in the schedules. Upon information and belief, FPC transferred certain lease payments to Defendants as required by the assignments.

25. Upon information and belief, Player caused EAR to agree to enter into the Master Lease because doing so furthered his fraudulent scheme. The transactions with FPC and the Defendants are of the type of financing arrangements that Player used to perpetuate his wrongful scheme. As a result of the misconduct, EAR creditors that had financing and leases which were part of Player's scheme, including FPC, have been unable to identify what, if any, equipment that was previously located at EAR's facilities was subject to a valid security agreement or lease. Because the transfers made to FPC and the Defendants were part of Player's fraudulent scheme, the transfers that EAR made to the Defendants in satisfaction of the lease schedules were made with the actual intent to hinder, delay, and defraud EAR's remaining creditors.

## CLAIMS FOR RELIEF

### PREFERENTIAL TRANSFERS
### UNDER 11 U.S.C. §§ 547 & 550

26. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

27. In the 90 days immediately preceding the Petition Date, EAR transferred $1,126,355.26 to FPC. Specifically, EAR made three transfers from its account at Norstates Bank:

| Date | | Amount |
|---|---|---|
| 8/5/2009 | $ | 99,947.29 |
| 8/15/2009 | $ | 725,000.00 |
| 8/15/2009 | $ | 301,407.97 |
| Total | $ | 1,126,355.26 |

Under the terms of the assignments, FPC was required to transfer portions of these payments to the Defendants (the "**Preferential Transfers**"). On information and belief, the Defendants received the following amounts from FPC:

| Defendant | Amount |
|---|---|
| FSB | $ 91,351.00 |
| Minnwest | $ 181,672.14 |
| Eagle | $ 108,506.94 |
| SBT | $ 63,680.00 |
| Highland | $ 92,812.91 |
| Prosperan | $ 117,874.00 |
| TNB | $ 65,272.00 |
| Landmark | $ 35,975.88 |
| Signature | $ 22,024.00 |
| ***Total*** | $ 779,168.87 |

28. The Preferential Transfers were made to or for the benefit of the Defendants, as assignees of the lease schedules and creditors of EAR.

29. The Preferential Transfers were made for or on account of an antecedent debt owed by EAR before the Preferential Transfers were made.

30. The Preferential Transfers were made while EAR was insolvent.

31. The Preferential Transfers were made on or within 90 days before the Petition Date.

32. The Preferential Transfers enabled the Defendants to receive more than they would have received if the case were a case under Chapter 7 of title 11 of the United States Bankruptcy Code (the "**Code**"), the Preferential Transfers had not been made, and the Defendants received payment on such debt to the extent provided by the provisions of the Code.

33. Pursuant to 11 U.S.C. § 547, the Plaintiff is entitled to judgment avoiding the Preferential Transfers.

34. Plaintiff is entitled to recover the value of the Preferential Transfers from the Defendants under 11 U.S.C. § 550, because the Defendants were the initial transferee of the Preferential Transfers, as the FPC did not gain dominion over the funds received from EAR's

bank account that were required to be sent to Defendants under the terms of the assignments. In the alternative, the Defendants are mediate or immediate transferees of the Preferential Transfers.

## PRAYER

Wherefore, Plaintiff respectfully requests that the Court enter judgment and grant it the following relief against the Defendants:

1. Entering an order of judgment avoiding the Preferential Transfers;
2. Entering an order of judgment in the amount of $91,351.00 in favor of the Plaintiff and against FSB;
3. Entering an order of judgment in the amount of $181,672.14 in favor of the Plaintiff and against Minnwest;
4. Entering an order of judgment in the amount of $108,506.94 in favor of the Plaintiff and against Eagle;
5. Entering an order of judgment in the amount of $63,680.00 in favor of the Plaintiff and against SBT;
6. Entering an order of judgment in the amount of $92,812.91 in favor of the Plaintiff and against Highland;
7. Entering an order of judgment in the amount of $117,874.00 in favor of the Plaintiff and against Prosperan;
8. Entering an order of judgment in the amount of $65,272.00 in favor of the Plaintiff and against TNB;
9. Entering an order of judgment in the amount of $35,975.88 in favor of the Plaintiff and against Landmark;
10. Entering an order of judgment in the amount of $22,024.00 in favor of the Plaintiff and against Signature;
11. Prejudgment and post-judgment interest as allowed by law; and
12. All other relief to which it is entitled.

Dated: October 23, 2011              Respectfully submitted,

                                                                      /s/ J. Maxwell Beatty
One of the attorneys for Plaintiff
William A. Brandt, Jr., solely in his capacity as Plan
Administrator for Equipment Acquisition
Resources, Inc.

Allan B. Diamond (TX Bar 05801800)
adiamond@diamondmccarthy.com
Jon Maxwell Beatty (TX Bar 24051740)
mbeatty@diamondmccarthy.com
Diamond McCarthy LLP
909 Fannin, Suite 1500
Houston, Texas 77010
Tel: (713) 333-5100
Fax: (713) 333-5199